**In re MOHAWK INDUSTRIES, INC., Debtor.**

**MOHAWK INDUSTRIES, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

Bankruptcy No. 4–84–00025–G.
Adv. No. 4–84–0118.

United States Bankruptcy Court, D. Massachusetts.

Nov. 26, 1985.

Philip J. Hendel, Joseph H. Reinhardt, Hendel, Collins & Stocks, P.C., Springfield, Mass., for plaintiff.

Christopher Klieforth, Glenn L. Archer, Jr., Asst. Attys. Gen., U.S. Dept. of Justice, Tax Div., Washington, D.C., William F. Weld, U.S. Atty., Boston, Mass., Joseph S. Ackerstein, Asst. U.S. Atty., for defendant.

MEMORANDUM RE: ISSUANCE OF PERMANENT INJUNCTION IN RESPONSE TO PLAINTIFF'S COMPLAINT TO ENJOIN FURTHER ACTION IN THE COLLECTION OF 100% PENALTY ASSESSMENT AND DEFENDANT'S MOTION TO DISMISS

PAUL W. GLENNON, Bankruptcy Judge.

This matter comes before the Court on Mohawk Industries, Inc.'s ("Mohawk" or

"Debtor") request for a permanent injunction with respect to its Complaint seeking both preliminary and permanent injunctive relief regarding efforts by the Internal Revenue Service ("IRS") to collect a one hundred percent penalty tax against its officers, Richard J. Scullin ("Scullin"), president of Mohawk, and John J. Nostley ("Nostley"), former treasurer of Mohawk. On October 2, 1984, this Court, after hearing arguments by counsel, entered a preliminary injunction preventing the IRS from undertaking further collection efforts against Scullin and Nostley. Subsequently, on October 30, 1984, the IRS filed a Motion to Dismiss Mohawk's Complaint, which motion was opposed. The Court heard arguments on both Mohawk's request for a permanent injunction and the Motion to Dismiss of the IRS and is now in a position to issue findings of fact and conclusions of law.

## FACTS

The essential facts are neither complicated nor disputed. On January 13, 1984, Mohawk filed a petition for relief with the Court pursuant to Chapter 11 of the United States Bankruptcy Code. Thereafter, it continued to operate its business as a debtor-in-possession pursuant to 11 U.S.C. § 1108. The Debtor in its bankruptcy schedules listed the IRS as holding a priority unsecured claim for withholding and F.I.C.A. taxes in the aggregate amount of $60,119.43 arising from pre-petition arrearages during the fourth quarter of calendar year 1983.

On August 6, 1984, the IRS assessed a one hundred percent penalty tax in the amount of $52,632.40 against Scullen and Nostley, as responsible officers of Mohawk, pursuant to 26 U.S.C. § 6672. This section, in relevant part, provides:

Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

26 U.S.C. § 6672.

On September 14, 1984, Mohawk ceased manufacturing operations and filed with the Court a liquidating Chapter 11 Plan of Arrangement (the "Plan"). Under Article 3, Section B of the Plan, Mohawk proposed to pay the claim of the IRS in full and in cash out of the first available proceeds after payment of secured claims.[1] Despite actual knowledge of Mohawk's Plan the IRS informed Scullin and Nostley, on September 24, 1984, that it intended to pursue its collection effort against them individually by placing liens against their real and personal property with the ultimate intent of satisfying the August 6, 1984 assessment through foreclosure of the liens.

As a result, the Debtor filed the instant adversary proceeding, and the Court one day later, entered a preliminary injunction. The Court directed the parties to submit memoranda of fact and law in support of their respective positions on the issuance of a permanent injunction by November 1, 1984. The IRS filed a Motion to Dismiss and a memorandum in support thereof on October 30, 1984.[2] Mohawk submitted a

1. Indeed, Mohawk represented to the Court in its Complaint that the value of its assets was more than sufficient to pay the claim of the IRS in cash and in full. Furthermore, at the October 2, 1984 hearing, counsel for Mohawk stated that "hopefully, the distribution to the IRS will occur in January." At the May 7, 1985 hearing, counsel for Mohawk was again optimistic about settling the IRS claim and suggested monies from an impending sale of assets coupled with money presently in the estate would be enough to pay the money owed to the IRS.

2. In its original Complaint, Mohawk named the IRS as defendant. In its Motion to Dismiss, the IRS argued that neither the Department of the Treasury nor the IRS is a suable entity. On November 1, 1984 Mohawk moved to amend its Complaint by substituting the "United States of America" for the "Department of the Treasury, Internal Revenue Service" as the defendant.

memorandum in support of the issuance of a permanent injunction and in opposition to the motion of the IRS on November 1, 1984. A hearing was had on both the Motion to Dismiss and the request for a permanent injunction on May 7, 1985.

The Court must decide whether or not to deny the Motion to Dismiss and convert the preliminary injunction of October 2, 1984 into a permanent injunction against further collection efforts by the IRS against Mohawk's officers. Mohawk argues that the bankruptcy court has jurisdiction under 11 U.S.C. § 505(a)[3] to hear a complaint of this nature involving tax liability and has injunctive power to enjoin IRS collection efforts pursuant to 11 U.S.C. § 105(a), which states "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." The IRS contends that the Debtor lacks standing to litigate the personal tax liability of its officers and that the Anti-Injunction Act, 26 U.S. § 7421(a)[4] applies to this action, thereby withdrawing the bankruptcy court's jurisdiction to hear and decide this matter. To reach a decision, the Court must consider three issues: 1) whether Mohawk has standing to bring a petition for injunctive relief; 2) whether the IRS waived its sovereign immunity; and 3) whether the Anti-Injunction Act applies to the instant proceeding.

## DISCUSSION

### I

The jurisdiction of the federal courts is limited by Article III of the United States Constitution to deciding "cases and controversies." *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1982). Standing is a jurisdictional issue related to the power of the federal courts to hear and decide cases. The court in *In re Datair Systems Corp.*, 37 B.R. 690 (N.D.Ill.1983) aptly summarized requirements for standing.

In order to determine whether the plaintiff has standing to bring a suit in federal court, it must be determined whether the plaintiff has alleged such a personal stake in the outcome of the controversy to warrant invocation of federal court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Jurisdiction can be invoked only when the plaintiff *himself* has suffered some threatened or actual injury resulting from the putatively illegal action. The plaintiff must assert his own legal rights and interests and cannot rest his claim for relief on the legal rights or interests of third parties.

37 B.R. at 693.

In the instant case, Mohawk claims that the assessment of the one hundred percent penalty against Scullin and Nostley will have a devastating effect on Mohawk's ability to implement its Chapter 11 liquidating plan of arrangement and its ability to provide the best possible recovery for creditors, while preserving jobs for the benefit of the economy in northern Berkshire County. Mohawk asserts that Scullin and Nostley are Mohawk's only remaining management personal. Ostensibly, their undivided attention is necessary to ensure successful sales of the Debtor's assets, as well as to effectuate the payment of creditors. In short, Mohawk claims it has the requisite stake in the outcome of the litigation and, therefore, has standing to challenge the decision of the IRS to assert liens

---

The Court granted Mohawk's motion on December 18, 1984.

**3.** Section 505, in relevant part, provides:
   ... the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
   11 U.S.C. § 505(a)(1).

**4.** The Anti-Injunction Act provides:
   Except as provided in sections 6212(a) and (c), 6213(a), 6672(b), 6694(c), 7426(a) and (b)(1), and 7429(b), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.
   26 U.S.C. § 7421(a).

against the real and personal property of Scullin and Nostley. It adds that the IRS will not be harmed by the injunction, since the plan of arrangement provides for full payment of the IRS claim.

Mohawk primarily relies on *In re Datair Systems Corp.*, 37 B.R. 690 (N.D.Ill.1983), to support its position on standing. In that case, the court, on facts similar to the ones alleged by Mohawk, found that the corporation had alleged a personal stake in the outcome of the controversy sufficient to warrant invocation of federal court jurisdiction and thus had standing to bring an injunction suit. In particular, the court adopted the reasoning of other courts considering the issue and found that section 505's jurisdictional grant by its own terms is not limited to a determination of the debtor's tax liability. The court concluded it had section 505(a)(1) jurisdiction to determine the legality of the section 6672 penalty, even if the penalty would not be assessed against the debtor. *See also In re Jon Co., Inc.*, 30 B.R. 831 (D.Colo.1983); *In re H & R Ice Co. Inc.*, 24 B.R. 28 (Bankr.W.D.Mo.1982).

The IRS contends that the bankruptcy court lacks jurisdiction to enjoin the United States from pursuing collection of employment taxes assessed against responsible persons of a corporation pursuant to 26 U.S.C. § 6672. The IRS, citing *United States v. Huckabee Auto Co.*, 46 B.R. 741 (M.D.Ga.1985), informs the Court that the Internal Revenue Code of 1954, pursuant to 26 U.S.C. §§ 3102(a) and (b), 3402 and 3403, requires all employers to withhold from their employees' gross wages a scheduled amount representing the employees' F.I.C.A. and income tax obligations and that section 7501 of the Internal Revenue Code, with respect to income tax withholdings, states that these taxes "shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501. The IRS notes that because the government bears the loss caused by employers' defalcations, Congress, through section 6672, imposed personal liability upon officers, employers or other responsible persons

whose duty it is to collect, account for and pay over taxes to the government.

Because section 6672 was "intended to 'cut through the shield of organizational form' and impose liability upon those individual persons actually responsible for an employer's failure to withhold and pay over taxes," *United States v. Huckabee Auto Co.*, 46 B.R. at 743 *quoting Allen v. United States*, 547 F.Supp. 357, 359 (N.D.Ill. 1982), the IRS argues that the section 6672 penalty is distinct from and in addition to the employer's liability, *Monday v. United States*, 421 F.2d 1210 (7th Cir.1970). As a result, the IRS argues it does not have to attempt collection from a delinquent corporation such as Mohawk before assessing responsible persons under section 6672. *See, e.g., Datlof v. United States*, 370 F.2d 655 (3d Cir.1966); *Kelly v. Lethert*, 362 F.2d 629 (8th Cir.1966); *Cash v. Campbell*, 346 F.2d 670 (5th Cir.1965); *In re Dore & Associates Contracting, Inc.*, 45 B.R. 758 (Bankr.E.D.Mich.1985).

The United States Supreme Court has noted that the IRS has a policy of assessing the section 6672 penalty against corporate officers only when the corporation itself is unable to pay the tax. It observed:

'IRS uses the 100-percent penalty only when all other means of securing the delinquent taxes have been exhausted. It is generally used against responsible officials of corporations that have gone out of business.... [I]t is the IRS policy that the amount of the tax will be collected only once. After the tax liability is satisfied, no collection action is taken on the remaining 100-percent penalties.'

*United States v. Sotelo*, 436 U.S. 268, 279 n. 12, 98 S.Ct. 1795, 1802, 56 L.Ed.2d 275 (1978). In response to the Supreme Court's observation, the district court in *United States v. Huckabee Auto Co.* stated,

[T]here is simply no authority to suggest that the remedy provided in § 6672 is precluded as a matter of law absent an exhaustion of other remedies. The bankruptcy court erred in holding that 'there is no need [and thus no justification] to

resort to section 6672' when the IRS 'will be paid in full through a Chapter 11 plan ....'

46 B.R. at 744 *quoting In re Huckabee Auto Co.*, 43 B.R. 306, 311 (Bankr.M.D.Ga. 1984). The district court also stated that "[w]here the IRS appears to have deviated from this policy by asserting a § 6672 penalty even though the corporation is able to pay the tax—or is paying it pursuant to a confirmed plan of reorganization—the individual's proper recourse is to assert this breach of policy as an abuse of administrative discretion." 46 B.R. at 744. As a result of IRS arguments similar to the ones repeated here, the district court concluded that the bankruptcy court lacked jurisdiction, refusing, in the absence of congressional action, to "sanction the imposition of a judicially created limitation on the power of the government to seek an assessment of a § 6672 penalty simply because the IRS may be able to collect the tax from the debtor over a six year period." *Id.* The Court added "[w]hether the penalty if assessed will in fact injure the debtor is irrelevant. Again, even if § 6672 could operate so as to interfere with a Chapter 11 reorganization, Congress must decide what relief, if any, is warranted." *Id.*

It is apparent that there is a split of authority on whether a debtor corporation has standing to attack IRS attempts to impose personal liability on its corporate officers. The Court finds the district court's reasoning in *United States v. Huckabee Auto Co.* to be persuasive. Other recent decisions are in accord. *See, e.g., In the Matter of Driscoll's Towing Service, Inc.*, 51 B.R. 990 at 4 (S.D.Fla. 1985) ("The principals of the bankrupt, having created the corporate entity to insulate themselves from personal liability, seek to use the corporation to further shield themselves from their own personal liability.... Absent clear congressional intent to the contrary, the corporation's financial health cannot be used as an excuse by the corporate principals for avoiding their personal obligations to account for and be responsible for employment taxes."); *United States v. Rayson Sports, Inc.*, 54 AFTR 2d

84–8434, 44 B.R. 280 (N.D.Ill.1984) ("The fact that a corporation and its responsible officers are entirely separate entities for purposes of withholding tax liability seems to us dispositive of the standing issue; one entity simply cannot litigate the tax liabilities of the other.") In addition, the Court believes the court's reading of section 505(a) of the Bankruptcy Code in *In re Datair Systems Corp.* is open to question. That section deals with the bankruptcy court's determination of the amount or legality of any tax. The Court hesitates to stretch the plain meaning of Section 505(a) to encompass the question of the Court's jurisdiction to issue a permanent injunction with respect to efforts by the IRS to assess a penalty tax against corporate officers of a debtor where neither the amount nor legality of the tax is in dispute. Nevertheless, the Court does not deny that Mohawk may be adversely affected by the actions of the IRS against Scullin and Nostley. Indeed, recognition of this fact motivated the Court to issue a preliminary injunction, thereby preserving the status quo at least temporarily. However, the Court need not decide the standing issue in view of its decision with respect to the Anti-Injunction Act discussed below.

## II

The IRS claims that it is immune from suit but cites no facts or authorities to support its position, choosing to rely on general precepts instead. The Court agrees with the IRS to the extent that "[i]t is a well established principal of law that the United States is immune from suit except in those instances where it has specifically waived its sovereign immunity." *In re Datair Systems Corp.*, 37 B.R. 694. However, the Court is persuaded by Mohawk's arguments.

Mohawk contends that section 106(a) of the Bankruptcy Code is an express waiver of sovereign immunity that is binding on the IRS since it filed claims in the Mohawk estate. Section 106(a) provides:

A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

11 U.S.C. § 106(a). Although the IRS may have argued that the claim that Mohawk seeks to enjoin is not property of the estate and that section 106(a) does not support a finding that the United States has waived its immunity with respect to claims made against officials outside of the bankruptcy proceeding, the Court finds, as did the court in *In re Datair Systems Corp.*, that section 106(a) is applicable. The government waived its sovereign immunity in seeking to enjoin a claim against Mohawk's officers for the Debtor's unpaid taxes since it filed a claim against the estate and the enforcement of the claim against the corporate officers arises out of the same transaction or occurrence and may adversely affect the Debtor's ability to effectuate a plan of arrangement. *See, In re Datair Systems Corp.*, 46 B.R. at 694–95, and 697.

### III

Courts also are split on whether the Anti-Injunction Act precludes bankruptcy courts from issuing injunctions in the type of case presently before the Court. *Compare Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975) (The Anti-Injunction Act is not relevant since Congress evidenced an intention to enact a complete statutory scheme governing bankruptcy which overrides the general policy of the statute.); *In the Matter of A & B Heating and Air Conditioning, Inc.*, 48 B.R. 401 (M.D.Fla.1985); *In re Steel Products, Inc.*, 47 B.R. 44 (W.D. Wash.1985); *In re The Original Wild West Foods, Inc.*, 45 B.R. 202 (W.D.Tex.1984); *In re Jon Co., Inc.*, 30 B.R. 831 (D.Colo. 1983) *with Matter of Becker's Motor Transportation, Inc.*, 632 F.2d 242 (3d Cir. 1980) (Judicially created exceptions to section 7421(a) contravene clear congressional intent.); *In re Arrow Transfer and Storage Co.*, 50 B.R. 726 (M.D.Tenn.1985); *In the Matter of Driscoll's Towing Ser-*

*vice, Inc.*, 51 B.R. 990 (S.D.Fla.1985); *United States v. Rayson Sports, Inc.*, 54 AFTR 2d 84–8434, 44 B.R. 280 (N.D.Ill. 1984). This is so despite the straightforward language of the Act. The Act, in essence, denies federal and state courts subject matter jurisdiction to hear and decide cases which would interfere with the regular collection of taxes. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 5, 82 S.Ct. 1125, 1128, 8 L.Ed.2d 292 (1962). However, a narrow exceptions to the rule was judicially created in *Enochs v. Williams Packing & Navigation Co.* In that case, the Supreme Court noted that the Anti-Injunction Act apparently has no recorded legislative history and that the principal purpose of the Act's explicit language is protection of the government's need to assess and collect taxes as expeditiously as possible with a minimum of pre-inforcement judicial interference, thereby making refund suits the proper method for determining the legal right to disputed sums. 370 U.S. at 7, 82 S.Ct. at 1129. In *Bob Jones University v. Simon*, 416 U.S. 725, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1973), the Supreme Court reviewed the *Enochs* decision and clearly enunciated its narrow exception: "[o]nly upon proof of two factors [can] the literal terms of § 7421(a) be avoided: first, irreparable injury, the essential prerequisite for injunctive relief in any case; and second, certainty of success on the merits." 416 U.S. at 737, 94 S.Ct. at 2046. It added the Act may not be evaded "'merely because collection would cause irreparable injury such as ruination of the taxpayer's enterprise.'" *Id.* at 745, 94 S.Ct. at 2050. A recent Supreme Court case construing the Act, *South Carolina v. Regan*, 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), which is discussed at length in *In re Dore & Associates Contracting, Inc.*, 45 B.R. 758 (Bankr.E.D. Mich.1985), held that "the Act was not intended to bar an action where ... Congress has not provided the plaintiff with an alternative way to challenge the validity of a tax." 104 S.Ct. at 1111. *South Carolina v. Regan* suggests that the narrow excep-

tion enunciated in *Enochs* and reaffirmed in *Bob Jones University* is irrelevant in the absence of an alternative legal avenue for challenging the imposition of a tax. This factor was not at issue in either *Enochs* or *Bob Jones University.*

The court in *In re Dore & Associates Construction, Inc.* interpreted the *South Carolina v. Regan* case to mean that "the scope of the Anti-Injunction Act was intended to parallel that of the familiar maxim of equity jurisprudence that one must show the unavailability of any remedy at law before one may petition for equitable relief." *Id.* 45 B.R. at 762. Thus, the court concluded that if it was persuaded no alternative remedy was available, the grant of an injunction would be governed by the following normal standards:

(1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

(2) Whether the plaintiff has shown irreparable injury;

(3) Whether issuance of a preliminary injunction would cause substantial harm to others; and

(4) Whether the public interest would be served if the injunction were issued.

45 B.R. at 755.

The court in *In re Datair Systems Corp.* also recommended use of these standards. After noting the dilemma between "(1) the government's need to collect taxes and the fact that section 7421 makes no exception for bankruptcy cases," *cf. Matter of Becker's Motor Transportation, Inc.,* and (2) "the general policy of the Bankruptcy Act, which is the rehabilitation of financially troubled businesses," *cf. Bostwick v. United States,* the court advocated a case by case determination of whether equity and the common good require an injunction, thereby eliminating the need for a judicially created exemption. 37 B.R. at 696. The court, however, did not apply these standards because only the standing issue was before it.

■ Since, neither Mohawk nor its officers dispute the validity or amount of the assessed liability, payment either by Mohawk or its officers followed by a refund suit arguably would be an inadequate remedy. The Court, need not find that Mohawk has no viable remedy through which to challenge collection efforts by the IRS, however. Under either the *Enochs* exception or the traditional standards for invoking equitable jurisdiction, Mohawk must establish a likelihood of success on the merits. This it has failed to do. As the court in *In re Dore & Associates Contracting, Inc.* noted, "[i]n order to permanently limit the IRS to collection according to the terms of the plan [or plan of arrangement, in this case], it would be necessary to prove either that the IRS had no right or authority to collect from the former officers or that the government had in some way, waived or otherwise lost its right to do so." 45 B.R. at 764. Clearly, there is no way for Mohawk to prevail on this point. Mohawk neither disputes the amount of the assessment nor the government's statutory authority to proceed against Scullin and Nostley. Also, as was mentioned previously, the IRS is not required to first try to satisfy the Debtor's tax liability from the assets of the bankrupt corporation. Rather, it may proceed in the first instance against responsible persons.

Mohawk, in its brief, submits that in the absence of a timely filed appellate proceeding with respect to the issuance of the October 2, 1984 preliminary injunction, further consideration of the applicability of the Anti-Injunction Act is foreclosed. Mohawk's argument ignores two obvious points: 1) a preliminary injunction, which by its very nature is interlocutory and designed to preserve the status quo, may be modified or dissolved when its purpose has been fulfilled or for any other good reason, *cf.* 7 J. Moore and J. Lucas, MOORE'S FEDERAL PRACTICE, ¶ 65.07 (1985); and 2) the issue of subject matter jurisdiction may be raised at any time.

In view of the memoranda submitted by the parties and entire record of the case, the Court concludes that it must deny Mohawk's request for a permanent injunction

and grant the Motion to Dismiss filed by the IRS.[5]

SO ORDERED.

---

5. The Court notes that it is not unsympathetic to the concerns of Mohawk. However, the Debtor has had the benefit of the preliminary injunction for over one year, an amount of time well beyond that originally contemplated by counsel for Mohawk to satisfy the IRS claim. Additionally, the sale referred to by counsel for Mohawk at the May 7, 1985 hearing mentioned in footnote 1 was approved by the Court on June 3, 1985. In view of the foregoing, the Court lacks the assurance that the IRS claim will in fact be paid in cash and in full as was the case when the preliminary injunction was granted.